# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**RAPHAEL SANTOS SILVA,**

      **Petitioner,**

v.                                                **Case No: 6:24-cv-1592-PGB-EJK**

**BRUNA GUEDES GIMENEZ SANTOS,**

      **Respondent.**
_____/

## ORDER

This cause comes before the Court on Petitioner's Verified Petition for the Return of Minor Child Pursuant to International Treaty and Federal Statute (Doc. 1 (the "**Complaint**" or "**Petition**")), filed August 30, 2024.[1] The Respondent filed an Answer and Affirmative Defenses (Doc. 33), and an evidentiary hearing was held on October 30, 2024.

## I.   LEGAL STANDARDS

The beginning of any discussion of the Hague Convention should start with what it is not: It is not a custody proceeding. Article 19 of the Hague Convention and 42 U.S.C. § 11601(b)(4) prohibit a court from determining the merits of any underlying child custody claims; rather, a court must only determine the parties'

---

[1] The Petition is brought pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, art. 2, Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89, reprinted in 51 Fed. Reg. 10,494 (Mar. 26, 1986) (the "**Hague Convention**" or "**Convention**"), as implemented by the International Child Abduction Remedies Act ("**ICARA**"), 42 U.S.C. §§ 11601–11610 (2009).

rights under the Hague Convention for the return of the child. Hague Convention, art. 19 ("A decision under this Convention concerning the child shall not be taken to be a determination on the merits of any custody issue."); 42 U.S.C. § 11601(b)(4) ("The Convention and this chapter empower courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims."). It is axiomatic that the primary purpose of the Convention is to restore the *status quo ante* and to deter parents from crossing international boundaries in search of a more sympathetic court. *Furnes v. Reeves*, 362 F.3d 702, 710 (11th Cir. 2004). Therefore, a court which has before it for consideration a petition for the return of a child pursuant to the Hague Convention "has jurisdiction to decide the merits only of the wrongful removal claim, not of any underlying custody dispute." *Lops v. Lops*, 140 F.3d 927, 936 (11th Cir. 1998).

The United States and Brazil are both signatories to the Hague Convention, which was adopted in 1980 to address the problem of intercountry child abduction under international law. The Convention seeks to "protect children internationally from the harmful effects of their wrongful removal or retention" caused either by the removal of a child from the state of its habitual residence or the refusal to return a child to the state of its habitual residence. *See* Hague Convention Preamble. A party invokes the protections of the Convention in the United States by filing a petition in either federal or state court under ICARA. 42 U.S.C. § 11603(b) ("Any person seeking to initiate judicial proceedings under the Convention for the return of a child . . . may do so by commencing a civil action by filing a petition for the

2

relief sought in any court which has jurisdiction of such action and which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed."); § 11603(a) (vesting concurrent original jurisdiction over Hague petitions in the state and federal courts). ICARA further provides that "[t]he court in which an action is brought under [§ 11603(b)] shall decide the case in accordance with the Convention." § 11603(d).

In his action for the return of his son to Brazil, the Petitioner bears the burden of proving by a *preponderance of the evidence* that the minor child was wrongfully removed or retained, as defined in the Hague Convention, by his mother, the Respondent. 42 U.S.C. § 11603(e)(1). Under the Convention, removal or retention of a child is considered wrongful if:

> a) it is in breach of rights of custody attributed to a person . . . either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
>
> b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Hague Convention, art. 3.

For the purposes of the Hague Convention, "'rights of custody' shall include rights relating to the care of the person of the child and, in particular, the right to determine the child's residence[.]" Hague Convention, art. 5. Therefore, in general, to determine a case for return a court must determine (1) when the removal or retention took place; (2) what the habitual residence of the child was immediately prior to the removal; (3) whether the removal or retention violated the petitioner's

3

custody rights under the law of habitual residence; and (4) whether the petitioner was exercising those rights at the time of the removal. In deciding whether a child was wrongfully removed or retained, the Convention permits a judicial authority considering a petition for return of the child to take notice of the judicial or administrative decisions from the State in which the child habitually resided before removal, "without recourse to the specific procedures for the proof of that law or for the recognition of foreign decisions which would otherwise be applicable. Hague Convention, art. 14.

The parties stipulate that Petitioner can show by a preponderance of the evidence that:

> 1. the habitual residence of the minor child immediately before the date of the alleged wrongful retention was in Brazil;
>
> 2. the retention is in breach of custody rights under the law of Brazil;
>
> 3. the Petitioner was exercising custody rights at the time of the alleged wrongful retention; and
>
> 4. the only pending issue for the final hearing is the child's objection to returning to Brazil.

(Doc. 32).[2]

## II.   DISCUSSION

Once the petitioner establishes that removal of the minor child was wrongful, the child must be returned unless the respondent establishes a defense.

---

[2] Respondent did not pursue any other defense available to her under the Hague Convention, including Article 13(a) (consent), Article 13(b) (grave risk of physical or psychological harm or an intolerable situation), or Article 20 (return is not permitted by the fundamental principles of the requested State relating to protection of human rights and fundamental freedoms).

4

*de Silva v. Pitts*, 481 F.3d 1279, 1285 (10th Cir. 2007). In addition to the four defenses provided for in the Convention, "[t]here is also a fifth consideration, left to the discretion of the judicial or administrative authority, which allows for refusal to order the return of a child where 'the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views.'" *Id.* (citing Hague Convention, art. 13). The Tenth Circuit in *de Silva* explained that "[o]ne of the primary areas in which a court may appropriately decide not to return a child occurs when a child of sufficient age and maturity objects to being returned to the country of habitual residence." *Id.* at 1286.

The Fifth Circuit in *England v. England*, 234 F.3d 268, 272 (5th Cir. 2000), similarly held that "a court may refuse repatriation *solely* on the basis of a considered objection to returning by a sufficiently mature child." That said, the court "must apply a stricter standard in considering a child's wishes when those wishes are the sole reason underlying a repatriation decision and [are] not part of some broader analysis." *de Silva*, 481 F.3d at 1286 (citing *Blondin v. Dubois*, 238 F.3d 153, 166 (2d Cir. 2001)). The Convention does not provide an age limit for applying this exception. *Id.* However, if the trial court finds that the child's opinion is the product of "undue influence," the child's wishes need not be taken into account by the court. *Id.* (citing *Blondin*, 238 F.3d at 167).

Professor Elisa Perez-Vera, the official Hague Convention Reporter, wrote an explanatory report recognized as "the official history and commentary on the Convention and is a source of background on the meaning of provisions of the

5

Convention." *Leites v. Mendiburu*, No. 6:07-cv-2004-Orl-19DAB, 2008 WL 114954, at *5 (M.D. Fla. Jan. 9, 2008). Professor Perez-Vera explained the child's right to object under Article 13, as follows:

> [T]he Convention also provides that the child's views concerning the essential question of its return or retention may be conclusive, provided it has, according to the competent authorities, attained an age and degree of maturity sufficient for its views to be taken into account. In this way, the Convention gives children the possibility of interpreting their own interests. Of course, this provision could prove dangerous if it were applied by means of the direct questioning of young people who may admittedly have a clear grasp of the situation but who may also suffer serious psychological harm if they think they are being forced to choose between two parents. However, such a provision is absolutely necessary given the fact that the Convention applies, ratione personae, to all children under the age of sixteen; the fact must be acknowledged that it would be very difficult to accept that a child of, for example, fifteen years of age, should be returned against its will. Moreover, as regards this particular point, all efforts to agree on a minimum age at which the views of the child could be taken into account failed, since all the ages suggested seemed artificial, even arbitrary. It seemed best to leave the application of this clause to the discretion of the competent authorities.

*Id.* (citing The Perez-Vera Report, *Actes et documents de la Quatorzieme Session, 6 au 25 octobre 1980, Tome III, Enlevement d'enfants* at 433, ¶ 30, *available at* http://hcch.e-vision.nl/upload/expl28.pdf). The Second, Ninth, and Tenth Circuits have cited to Professor Perez-Vera's interpretative work in holding that "a court may refuse repatriation *solely* on the basis of a considered objection to returning by a sufficiently mature child."[3]

---

[3] *See de Silva*, 481 F.3d 1279; *Blondin*, 238 F.3d 153; *Gaudin v. Remis*, 415 F.3d 1028, 1037 (9th Cir. 2005).

6

Minor child L.C.G.G.S. testified at the evidentiary hearing, as did the Respondent and the Petitioner. L.C.G.G.S. presented as a confident, happy, and well-adjusted 13-year-old boy. He was relaxed and engaged throughout his testimony. L.C.G.G.S. attends a charter school where he enjoys science and learning English and Spanish. He has made about ten friends in school and has friends outside of the classroom who reside in his neighborhood. L.C.G.G.S. testified that he enjoys riding his bicycle with his friends and playing soccer. When asked why he wants to remain in the United States, L.C.G.G.S. explained that there is more opportunity in the U.S. and he hopes to earn a scholarship and attend college here.

L.C.G.G.S. was asked his understanding of the proceedings, and he explained that his father wants his immediate return to Brazil and is not respecting his desire to stay in the United States. L.C.G.G.S. testified that he told his father he wants to remain in the U.S. for these opportunities, describing life in the U.S. as a dream come true. L.C.G.G.S.'s mother testified that her son is happy and wants to stay in the U.S. where his grandmother, aunt, cousins, and friends reside. Respondent described L.C.G.G.S. as mature and aware of his surroundings. Respondent testified that once she received the Petition, she picked L.C.G.G.S. up from school, explained the meaning of the Petition to him, and stated that he has discretion on whether to remain in Florida or return to Brazil. Respondent claims she and L.C.G.G.S. called the Petitioner to discuss the Petition and to ask L.C.G.G.S. where he prefers to reside.

The Petitioner paints a somewhat different and at times contradictory story. Petitioner testified that during telephone calls with L.C.G.G.S., Respondent and her sister "would influence his responses." However, the Petitioner fails to describe which responses were influenced or how L.C.G.G.S.'s mother and aunt influenced L.C.G.G.S.[4] The Petitioner also admitted L.C.G.G.S. stated to him during a conversation that he wants to remain in the U.S. "because he had better opportunities" and "better education opportunities." As such, Petitioner corroborates L.C.G.G.S.'s motive for wanting to remain in the U.S.

The Petitioner also testified that L.C.G.G.S. claimed he would kill himself if forced to return to Brazil, but counsel for the Petitioner did not ask L.C.G.G.S. on cross-examination if he made this threat. Similarly, the Petitioner did not testify that he told anyone about L.C.G.G.S.'s alleged threat to harm himself, which calls the testimony into question. And so, the Court does not give much weight to the alleged threat of self-harm in determining L.C.G.G.S.'s maturity.

The Petitioner also suggested that the Respondent left Brazil under false pretenses, never intending to return. Petitioner notes that Respondent and her husband had vacated their apartment in Brazil and placed an ad to sell a family vehicle before departing on the trip to Florida. The Respondent explains that the

---

[4] Petitioner's counsel asked: "What sort of things did the mother say that you heard her say to your son?" To which the Petitioner replied, "Sometimes I would call to speak to them and the minor, the minor child, would say, I'll speak to you if I want to and then she would merit, tell her (sic) that she didn't have to talk to me if she didn't want to." Telling a reluctant 13-year-old that he does not have to speak to his father when he does not want to falls short of pressuring L.C.G.G.S. to testify falsely about his preferred place of residence. And Petitioner admits he never spoke with L.C.G.G.S.'s aunt and never spoke with his grandmother.

8

lease had expired, and she was searching for a new apartment. Respondent also claims that her husband's car was advertised for sale because she was in the market for a new car. Even assuming the Respondent's trip to Florida was a subterfuge leaving Brazil with L.C.G.G.S. to give birth in Florida and remain here, the Petitioner does not point to a provision in the Hague Convention or applicable law that requires the return of L.C.G.G.S. based on his mother's motive in leaving Brazil.[5]

    The issue before the Court is simple: whether L.C.G.G.S has attained an age and degree of maturity sufficient for his views to be taken into account and is free from undue family pressure. *See Leites v. Mendiburu*, 2008 WL 114954, at *5; *see also Laguna v. Avila*, 07-CV-5136(ENV), 2008 WL 1986253, at *11 (E.D.N.Y. May 7, 2008). The Court finds L.C.G.G.S. has attained an age and degree of maturity sufficient to have his preferences heard and acknowledged. L.C.G.G.S. is a bright and articulate teenager who appears to be happy and well-adjusted. L.C.G.G.S.'s decision to remain in the U.S. is the product of thoughtful consideration, including the presence of family and friends, educational opportunities, and quality of life. L.C.G.G.S. is focused on his future and hopes to attend college with his new friend group. The Court finds L.C.G.G.S.'s preference for remaining in the U.S. is not the product of undue family pressure and will be honored.

---

[5] Whether Immigration extends Respondent's tourist visa or allows her to remain in the U.S. after giving birth to a U.S. citizen is not relevant to the narrow issue before the Court.

## III. CONCLUSION

For these reasons, it is **ORDERED AND ADJUDGED** that the Petitioner's Verified Petition for the Return of Minor Child Pursuant to International Treaty and Federal Statute (Doc. 1) is **DENIED** and minor child L.C.G.G.S. will not be required to return to Brazil. The Clerk of Court is **DIRECTED** to close the file.

**DONE AND ORDERED** in Orlando, Florida on October 30, 2024.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties